NEW ORLEANS & NORTHEASTERN R. R. *v.* MORRISON *et al.*

(In Banc. April 26, 1948.)

[35 So. (2d) 68. No. 36759.]

792

Cameron & Wills, of Meridian, and J. Blanc Monroe of New Orleans, La., for appellant.

794

**Wilbourn, Miller & Wilbourn,** of Meridian, for appellee and cross-appellant, **E. A. Morrison,** Trustee.

**Butler & Snow,** of Jackson, for appellees, **T. F. Hodge** et al.

800

Argued orally by **Ben F. Cameron**, for appellant, and by **R. E. Wilbourn** and **George Butler, Jr.**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

On January 23, 1882, Mrs. E. K. Taylor executed to appellant a deed in the following form:

"Know All Men by These Presents, that for and in consideration of the benefits to accrue to me by the construction of the New Orleans and Northeastern Railroad, and for the sum of $1.00 to me in hand paid by said company, I hereby grant, bargain, sell and quitclaim unto the said New Orleans and Northeastern Railroad Company, a right of way for 200 feet, through the following lands, to-wit:

"W½ SW¼ Sec. 28 & E½ SE¼ Sec. 29, T 1 N, R 13 E reserving the privilege of using any timber on said land and cultivating any of the same not used in the construction and operating said road, situate in said county being 100 feet from the centre of the road bed, on either side, to be constructed by said company. And I hereby covenant to warrant and defend the title of said company to said lands against any and all persons claiming under by or through me."

After the death of Mrs. Taylor, intestate, her only heirs made partition of her lands among themselves by mutual conveyances. Thereafter the said heirs and those who had inherited per stirpes from such original heirs as were deceased, executed to E. A. Morrison, as trustee, a deed to all the minerals "in, on and under" the "200

foot right of way'' of the appellant. Its location is in the West half of the Southwest quarter of Section 28, and the East half of the Southeast quarter of Section 29, all in Township One North, Range 13 East.

In the meantime some of the heirs had executed mineral deeds and leases to certain persons who were made parties by amendment.

Bill was filed by E. A. Morrison as trustee against the railroad company and the several owners of mineral interests to quiet title to the minerals under the two-hundred-foot strip designated as a right of way.

Each of the several deeds of partition between the heirs of Mrs. Taylor, and from such heirs to third parties, described the respective parcels as lying ''East (or west) of the N O & N E Railroad'' and as containing a given number of acres ''more or less.''

Appellant railroad company contends that, by the conveyance of Mrs. Taylor, it took a fee simple title to the litigated strip. The heirs of Mrs. Taylor, acting through Morrison, trustee, claim to own all minerals therein subject only to an alleged easement of the company. The mineral owners and lessees assert ownership and rights to the said minerals. It will be seen, therefore, that the heirs and mineral assignees make common cause against the appellant as respects its claim to a fee ownership. The trial judge decreed title in the appellant to an easement only; found the heirs owned minerals under the right of way; and that the grantees and lessees of mineral interests had valid title thereto up to the center line of the right of way. As between the heirs and the owners of mineral interests, the former contend that they acquired title in severalty to their respective allotments up to, but not beyond the boundaries of the right of way. As to the minerals under the easement strip, they assert that their title thereto as heirs and tenants in common has not been divided or alienated. By seeking to restrict their partition deeds to the lands outside the easement, they would justify a similar interception of their grantees

at this barrier. The latter group of parties assert that the partition deeds carried title to the center line, and, with similar reason, that the conveyances to them carried like title.

We take up first the claim of appellant. Elaborate argument is presented to support a view that the deed by Mrs. Taylor was an effective livery of seizin under Code 1942, Section 831, and that its contemplated use thereof for railroad purposes was but an incident to its complete acquisition of title to the fee.

Let us examine the deed. By its language it conveyed a "right of way." It did not convey land, but a right (of passage) "through" the land. No particular strip was identified with that certainty which a conveyance of the fee would require. It was only a floating easement or right of user of a strip 200 feet wide through the two quarter sections. The reservations as to timber and cultivation were consistent rather with an easement than title in fee. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22.

In the habendum clause there was a "covenant to warrant" which is not a general, but at most a special warranty. In the instance here present, this language may not be allowed to rise to the efficacy of a warranty of the fee by a granting clause. That which was here granted is both by its text and its context a mere right. Grantor's "covenant to warrant and defend" was a guaranty but not a grant. Lake Erie & W. R. Co. v. Ziebarth, 6 Ind. App. 228, 33 N. E. 256.

The record discloses no relevant facts upon which draft may be made to construe the deed otherwise than according to its purport. Appellant argues that at the date of the deed its grantors had no reason to withhold the fee, since there was no ground to suspect the presence of subsurface minerals. Such attitude must also have been held by appellant whose complete purpose could have been, and was, served by the right of passage with its normal incidents. It has been held in such cases that where an

easement will satisfy the purpose of the grant a fee will not be included in the grant unless expressly provided. See Whitworth v. Mississippi State Highway Commission, 203 Miss. 94, 33 So. (2d) 612.

We have been unable to find any controlling relevancy in the fact that the appellant has for many years paid taxes assessed upon the 200-foot strip, nor in other circumstances which would be in point only if there were ambiguity in the language of the instrument. Gaston v. Mitchell, 192 Miss. 452, 4 So. (2d) 892, 6 So. (2d) 318. No implication of a fee can arise where, by the terms of the deed, there are conveyed rights adequate to the grantee's special purpose which is consistent with the owner's retention of the fee. 28 C. J. S., Easements, Sec. 27, p. 682. Compare Hill v. Woodward, 100 Miss. 879, 893, 57 So. 294, 39 L. R. A. (N. S.) 538, Ann. Cas. 1914A, 390. Whelan v. Johnson, 192 Miss. 673, 6 So. (2d) 300, is beside the point. It is there seen that acquisition by a railway company of a fee simple title was under authority and direction of a legislative act.

We are of the opinion that the learned trial judge was correct in adjudging appellant's title only as an easement. We find no error in the exclusion of the deposition of Jones. Its only relevancy was upon the issues of contemporaneous construction and adverse possession. Yet it purported to sustain these issues only by disclosure of the appellant's legal conclusions and assumptions and its "exclusive possession of the land." There was never any defiance of appellees' title. The exclusive use of the surface was consistent with its mere right of way and its permissive user is inconsistent with the acquisition of prescriptive rights. Wilmot v. Yazoo & M. V. R. Co., 76 Miss. 374, 24 So. 701; Williams v. Patterson, 198 Miss. 120, 21 So. (2d) 477. See extensive annotation in 132 A. L. R. 142.

We consider next the contention of Morrison, trustee. The partition deeds of the heirs inter sese, as above stated, described the respective allotments as containing a given

acreage "more or less" and as lying "East (or West) of the . . . railroad."

We need not rationalize the several theories upon which the courts have reached an almost unanimous conclusion that such conveyances carry title in fee to the center line of the easement as to subsurface minerals and reversionary rights to the surface. Most of the cases are cited in the annotation to Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S. W. (2d) 1080, 85 A. L. R. 391, 404. Decisions of our Court are in harmony with these views. We forbear to extend our opinion by more ample citation. Other cases are set forth in briefs of counsel. See generally 8 Am. Jur., Boundaries, Secs. 39, 49.

The trustee, however, has been at pains to stand upon these principles without allowing the lessees or grantees from his grantors to gain a footing thereon. It is argued that while the heirs acquired the mineral interests beneath the right of way by inheritance, they in turn conveyed mineral interests in land bounded only by the margins of the way. Otherwise put, they partited only such lands as lay outside the easement strip, and claimed the minerals under the residuary strip as tenants in common.

The contention is ingenious, but upon the same vehicle by which we transport their rights beyond the side lines and unto the center, we cannot deny to their grantees and lessees equal passage. Grantees in the deeds of partition, who owned in common the lands on both sides of the right of way, have been given a sword of authority by which they may oust the appellant from beneath the right of way. They may not be permitted thereafter to convert it into a shield against their assignees who have made an approving common cause against appellant, but whose forward march to the center was sought to be halted at the side lines.

We do not document our conclusions with the available citations which abound in counsel's briefs. It is enough to state that we agree with the trial court's view that the title of the coparceners runs to the center of the right

of way, and by the several instruments executed by them they assigned to their grantees and lessees that which the Court has vouchsafed to their grantors. A contrary contention has in its elusiveness somewhat of a fugacious quality in which an unsuspected merit has been detected by an awakened optimism and brought into sympathetic view along with discovered oil. The views of the trustee are, however, pressed with unquestioned sincerity and with that vigor without which novelty must fail of sanction.

The decree of the chancellor is in complete accord with our unanimous view, and is affirmed.

Affirmed.