ALABAMA & VICKSBURG RAILWAY COMPANY *v.* MASHBURN

No. 40960 February 23, 1959 109 So. 2d 533

*Brunini, Everett, Grantham & Quin,* Jackson and Vicksburg; *Wright, Overstreet, Kuykendall & Perry, F. L. Wright, Jr., Byrd, Wise & Smith,* Jackson, for appellants.

*James H. Adams,* Raymond; *Wells, Thomas & Wells, L. A. Wyatt,* Jackson, for appellees.

ROBERDS, P. J.

The question for decision herein is whether appellant Railroad has a fee simple title to, or a mere easement in and over, a strip of land, comprising 5.45 acres, described in the bill, and being a part of the right-of-way of said Railroad. The chancellor held that the Railroad has only an easement. The question has given us much concern.

A majority of the Court has concluded that the Railroad has a fee. The solution of the question rests in the interpretation of the terms of the deed to the predecessor of appellant Railroad, in the light of the pertinent facts and circumstances extrinsic of the provisions of the deed, as affected by legislative enactments.

This is the deed: "KNOW ALL MEN BY THESE PRESENTS, THAT we, Daniel and Wm. Thomas in consideration of the sum of One Dollar to me in hand, or secured to be paid, have this day released, relinquished, and sold, and do by these presents release, relinquish, grant, bargain, sell, and convey unto the President, Directors, and Company of the Commercial and Rail Road Bank of Vicksburg, and their successors forever, all that portion of our tract of land near Clinton on Bakers Creek being parts of Section Nineteen (19) in Township No. Six of Range No. Two West of lands offered for sale at Mount Salus which is or may be necessary or useful to the said Company in the construction, use, and preservation of the Rail Road from Vicksburg to Jackson, the route whereof, according to the located survey of the Engineer, Mr. Van Rensellaer, from Station No. to Station No. runs through my said land.

"In testimony whereof I have hereunto set my hand and seal, this 25 day of A. D. 1836.

 "/s/ Daniel and Wm. Thomas
"/s/ Wylie Bohannon
"/s/ John Hayns"

These are the pertinent facts: The deed refers to a survey made by Van Rensellaer but does not contain the survey. However, it seems clear that the survey was made and that it was descriptive of the right-of-way, being sixty-six feet in width, although the actual survey could not be found. Construction of the Railroad from Clinton to Vicksburg, including the land in controversy, was completed about 1840, and the roadbed and right-of-way have been in their present location since that time.

The land north of the right-of-way is rolling land; that south of there is marshy. The Railroad, from time to time, has entered into lease agreements under which telephone and telegraph poles and wires have been constructed and operated by others, by permission of the Railroad, since 1906. The telephone lines are near, or along, the north edge, and the telegraph lines are on, or near, the south edge of the right-of-way. The Railroad has also constructed upon the right-of-way its own electric wires for the purpose of operating its trains. The right-of-way has been fenced for many years. The fences, at first, were maintained by the Railroad. It appears that in recent years the fences, or some of them, have been maintained by adjoining property owners. Since it acquired title to the property the Railroad has paid all ad valorem taxes thereon. It will be noted that the foregoing facts are consistent with ownership of the fee in the Railroad; some of them are not consistent with ownership, only of an easement.

The grantee in the deed was chartered by an Act of the Legislature of Mississippi in 1833. Chapter XIII, Laws of 1833. Section 4 of that Act provides: ''And said Company may procure by purchase or otherwise such lands or other property as may be necessary for the site of said road * * * and shall hold and possess the same in fee simple.'' The name of the railroad as incorporated was the President, Directors and Company of the Commercial and Railroad Bank of Vicksburg, of which appellant-Railroad is the ultimate successor.

Section 4 of said Act of incorporation further provided: ''And be it further enacted, that such persons as may become subscribers for the stock of said company, their successors and assigns, shall be and they are hereby created and made a corporation and body politic by the name and style of 'The President, Directors and Company of the Commercial Railroad Bank of Vicksburg.' * * * And said Company may procure by purchase or

otherwise, such lands or other property as may be necessary for the site of said road, or its construction, or for the erection of warehouses or other works incident thereto, or for any other purpose proper for the construction of said railroad, or for the repairing the same, or for the use and purposes of the bank and its branches, and shall hold and possess the same in fee simple."

■■ It is not denied that Daniel and William Thomas, the grantors to the Railroad, had the fee simple title to the land in controversy. The granting clause of the deed was "* * * have this day released, relinquished, and sold, and do by these presents release, relinquish, grant, bargain, sell, and convey * * *", which wording constitutes a representation by grantors that they did own the fee. Section 2, Part II, Title I, Article I, Revised Statutes of Mississippi of 1836, in force at the time of the execution of said deed, provided: "Every estate of inheritance, notwithstanding the abolition of tenures, shall continue to be termed a fee simple, or fee; and every such estate, when not defeasible or conditional, shall be termed a fee simple absolute, or an absolute fee."

■■ Part II, Title V, Section 1 on p. 548 of said Revised Statute, provided: "* * * every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the grant." Certainly no less estate than a fee was granted by express terms of the deed. Nor can it be said such estate was necessarily implied. Six Members of this Court are of the opinion that that is not true. That would seem sufficient to refute the conclusion an estate less than a fee was implied. Great weight has been given the effect of charter provisions and statutes.

Whelan, et al. v. Johnston, et al., 192 Miss. 673, 6 So. 2d 300; Mississippi Central Railroad Company, et al. v.

Ratcliff, et al., 214 Miss. 674, 59 So. 2d 311; New Orleans & Northeastern R. R. Company v. Morrison, et al., 203 Miss. 791, 35 So. 2d 68. In the Ratcliff case the Court noted the deed was in the form of a warranty deed and gave effect to the statutory provision that a deed in such form carried the fee under Section 2764, Miss. Code 1906, (Sec. 833, Miss. Code 1942). And in the Morrison case, supra, the Court, directing its observation to Whelan v. Johnston, supra, said: "It is there seen that acquisition by a railway company of a fee simple title was under authority and direction of a legislative act."

It would seem that in the case at bar this Court has already decided that a fee vested in the grantee Railroad. In the case of Arthur v. The President, Directors and Company of the Commercial and Rail Road Bank of Vicksburg, 9 Smedes and Marshall, 394, January Term, 1849, the predecessor of appellant Railroad was in the hands of a receiver and the question arose as to what assets belonged to the Railroad. That, of course, involved the title the Railroad had to its right-of-way—whether the fee or an easement. The Court said: "What interest had the corporation in the railroad at the time of the assignment? By charter it would seem a fee simple. The banking privileges were to cease in thirty years, but there is no limit to the franchise of the railroad, and it is expressly authorized to hold the property and estate necessary for the purposes of the road in fee simple. Section 4 of Charter."

That would seem to establish the title of the Railroad to its right-of-way to be that of a fee simple estate. However, we will turn to the deed itself. By warranty it conveyed that portion of the *"land"* necessary or useful in the construction, use, and preservation of the Railroad. It did not convey a right. It conveyed the land. It conveyed the land to the grantee and its successors "forever." It is universally held that the convey-

ing and granting clause of a deed prevail over any subsequent provision tending to cut down the estate theretofore conveyed. Mississippi Central Railroad Company v. Ratcliff, et al., supra; and Jones v. N. O. and N. E. Railroad Co., et al., 214 Miss. 804, 59 So. 2d 541. The phrase ''which is or may be necessary or useful to the said Company in the construction, use, and preservation of the Rail Road from Vicksburg to Jackson'', has reference to the use to which the granted right-of-way would be put and to the quantity of the land necessary for that purpose—not to the quality of the estate conveyed. It is noted, too, the deed states that the survey of the engineer had been made, (although the metes and bounds the engineer had established were omitted in the deed.) The right-of-way was constructed according to that survey and it was sixty-six feet in width. There is a vast difference between a grant for purposes of a ''right-of-way'' for a road and a grant of land to be used for a road. This was a grant of land to be used for construction and operation of a railroad—not a grant of a right-of-way over land. The distinction is clearly defined in Jones, et al. v. N. O. & N. E. R. Company and Mississippi Central Railroad Company v. Ratcliff, supra.

 █ Appellees rely mainly upon New Orleans and Northeastern R. R. Company v. Morrison, supra. That case is readily distinguished from the case at bar. That was a quitclaim deed, and it expressly conveyed a ''right-of-way for 200 feet'' over and across certain lands. The deed also reserved to grantors certain timber on the conveyed lands and the right to cultivate such parts as might not be needed in the construction and operation of the Railroad. The Court expressly observed that such reservations were inconsistent with conveyance of the fee, and that the provisions of the deed did not convey land but conveyed only a right of passage through land,—a ''floating easement.'' Generally when a right is conveyed it is an easement; when land is conveyed grantee is

vested with a fee simple. Jones v. N. O. & N. E. R. Company; Mississippi Central Railroad Company v. Ratcliff, supra; Anno. 132 A. L. R. 142, and Anno. 136 A. L. R. 379.

■■ ■ The chancellor attached importance to the fact that the deed recited receipt of a nominal consideration. That fact has weight in determining whether an easement or fee has been conveyed. However, great weight should not be attached to that fact. The consideration might have been entirely different from that stated. When the case was tried there was no way to introduce proof bearing on that question. Besides, the benefit to the property owner resulting from construction and operation of the Railroad might have been the true consideration for the execution of the deed. Each case must be decided according to the facts of the case.

■■ ■ It is urged that we hold the deed invalid because the description of the property therein is uncertain. The Railroad got title to the land some one hundred and twenty-two years ago and has used it since. The proof is the construction of the Railroad was completed in 1840. There is also evidence, to memory of living persons, that the roadbed has been where it now is since 1884. There is no proof that any other railroad right-of-way or roadbed has ever existed along the route of appellant-Railroad and presumably its roadbed and right-of-way, observable to all persons, has been at its present location since 1840. The rule about that is this: "If, however, the grantor acquiesces in the location and use of right-of-way by the Company, such acquiescence will operate to identify and locate the route or property conveyed, and has the same legal effect as though it had been definitely described, especially where the Company pays the purchase price of the property granted and it is afterward fully located." 51 C. J., Railroads, Section 191; Thompson on Real Property, Section 3279 (3085).

In Martin, et al. v. Seaboard Air Line Railway, 77 S. E. 1060 (Ga.), the Court said: "The grant did not identify the land intended to be granted, but left it to the grantee to complete the identification by locating the road through the grantor's land. * * * Subsequently, when the grantee located its roadbed, that completed the identification of the land granted and fixed the rights of the parties under the deed, thereby confining the grantee to the land so appropriated."

In Como v. Pointer, 87 Miss. 712, 40 So. 260, this Court said: "It is, of course, firmly established that, where the vendor places his vendee in possession of land under certain boundaries or other descriptive terms, he will not afterwards be permitted to avail himself of any uncertainty or ambiguity in the terms employed. The contemporaneous construction by vendor and vendee evidenced by giving possession will fix the true meaning and intent of the parties. It is plain to our minds, therefore, that Bass and his vendees are by lapse of time vested with a perfect title to the land in question." The rule seems universal that where property is conveyed by a grantor to a railroad company for purpose of its right-of-way, without the full description of the land conveyed, the occupancy of a particular route by the grantee with the consent of the grantor will identify and locate the property for such purpose. Jackson v. Rogers, et al., 54 S. E. 2d 132 (Ga.). It indeed would be a travesty on justice to hold a deed void for imperfect description where a railroad has constructed its right-of-way and has been operating trains over the same for over one hundred years.

Reversed and judgment here for appellants, and remanded solely for an accounting.

*McGehee, C. J.,* and *Hall, Lee, Arrington* and *Ethridge, JJ.,* concur. *Kyle, Holmes* and *Gillespie, JJ.,* dissenting.