WHELAN *et al. v.* JOHNSTON *et al.*

(In Banc.   Feb. 23, 1942.   Suggestion of Error Overruled April 13, 1942.)

[6 So. (2d) 300.   No. 34791.]

674

May & Byrd and **Harry G. Gwinnup**, of Jackson, **Walter Sillers**, of Rosedale, **E. C. Craig**, of Chicago, Ill., and **C. H. McKay, Lucius E. Burch, Jr.**, and **Frank F. Roberson**, all of Memphis, Tenn., for appellants.

676

**J. G. Holmes,** of Yazoo City, for appellees.

Argued orally by **Walter Sillers** and **J. L. Byrd**, for appellant, and by **J. G. Holmes**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The Yazoo and Mississippi Valley Railroad Company was chartered in 1882 by Chapter DXLI of that session of the legislature. Section 7 thereof provides:

"That the right of way is hereby granted· said company to pass in and through the State of Mississippi, with said railroads, branches, spurs and laterals aforesaid, and to enter upon and use all lands, rocks, timber, earth, sand, gravel, water or other materials, which may be found on the routes selected, and which may belong to the State of Mississippi, and be convenient or necessary for the use of said railroads; and wherever said railroads or the branches, spurs or laterals aforesaid are located, over any lands belonging to this State, the title in fee simple, to one hundred feet on each side of the center of said railroad track or tracks shall vest in said company, its successors and assigns; . . . and to enter upon and appropriate all such lands and materials as may be private

property, which may be convenient or necessary for said road, together with one hundred feet on each side of the center of such road, laterals, branches, or spurs; and in case the company fails to agree with the owners of such lands or materials upon the price to be paid for the fee simple title thereto, or in case the owner is under any disability in law to contract, or, is absent from the county where such lands or materials are situate, or is unknown, the company may proceed to condemn such lands or materials as provided in section eight of the act, approved March 10, 1852, entitled 'an act to incorporate the Mississippi Central Railroad Company,' with all the rights and powers as therein provided; and upon such condemnation being had, the title in fee simple to such lands or materials, shall vest in the said company, its successors and assigns.''

The pertinent parts of Chapter 21, Section 8 of the Act of 1852 incorporating the Mississippi Central Railroad Company are:

''And in case of disagreement with the owner as to price of the land required for said road,'' a justice of the peace on application to him therefor shall impanel a jury of twelve ''who shall act as a jury of inquest of damages, having an oath or affirmation administered first to each by said sheriff or justice of the peace, justly and impartially to value the damages which the owner or owners will sustain by the use or occupation of the land, materials, or property required by said company; and the jury in estimating the damages, if for the ground occupied by said road shall take into the estimate the benefit resulting to such owner or owners by reason of said road passing through or upon said land, towards the extinguishment of such claim for damages; and the jury shall reduce their inquisition to writing and shall sign and seal the same; and such valuation when paid or tendered to the owner or owners of such property, his, or her or their legal representatives, if found in the county or thereafter paid on demand of any person legally authorized to re-

ceive the same shall entitle said company to the land, the estate and interest thus valued as fully as if it had been conveyed by the owner or owners of the same, for such term of time as said company shall occupy the same as a railroad.''

Acting upon the authority thus conferred a jury impanelled by a justice of the peace on the 11th day of September, 1882, rendered the following verdict:

''We the undersigned Jurors, being disinterested free holders of said County, and being first duly summoned, sworn and directed to assess the damages that will be sustained by O. H. Brumfield and J. M. Brumfield, the owners of the following described parcel of land in said County, towit: One hundred feet on each side of the staked line of said Railroad, being at Station 1803, and running to Station 1820, being a strip of land Two Hundred feet in width and Seventeen hundred feet in length, and also seventy-five feet on each side of said line from Station 1820, and running to a point twenty-one feet beyond Station 1852, being a strip of land One hundred and fifty feet in width and thirty-two hundred and twenty-one feet in length, all in Section Two, Township Ten, Range Three West, containing in all 18.68/100 acres, by reason of the use and occupation of said parcels of land by said Company, and having met upon and duly examined said property and being fully advised in the premises, upon our oaths, we the Jury do say said damages amount to Nine Hundred & Forty-Seven 85/100 Dollars, and in assessing the amount of said damages, the same was not diminished by a consideration of any benefit which would accrue to said O. H. Brumfield and J. M. Brumfield, by the building of said railroad—& we direct that plaintiff pay said damages and the costs herein expended.''

Appended thereto after the signatures of the jurors is the following receipt:

"Yazoo City, Miss.            Sept. 15, 1882.

"Received of the Yazoo and Mississippi Valley Railroad Company Nine Hundred and Forty-seven 85/100 Dollars in payment of the above damages.

         "J. E. Everett, Atty.

         "for O. H.—J. M. Brumfield."

The recital in this verdict that "in assessing the amount of said damages, the same was not diminished by a consideration of any benefit which would accrue to the said O. H. Brumfield and J. M. Brumfield by the building of said railroad" was evidently inserted therein for the reason that in Brown v. Beatty, 34 Miss. 227, 69 Am. Dec. 389, this court, or rather its predecessor the High Court of Errors and Appeals, held that the provision of Section 8 of the Mississippi Central Railroad Company's charter that "the jury in estimating the damages, if for the ground occupied by said road, shall take into the estimate the benefit resulting to such owner, or owners, by reason of said road passing through or upon said land, towards the extinguishment of such claim for damages" was constitutionally invalid.

The Yazoo & Mississippi Valley Railroad Company granted to Whelan the right to enter the land thus acquired by it and remove oil and gas therefrom. Lucy and Maggie Brumfield, who claim through the Brumfields, who owned the land when it was appropriated by the railroad company, have executed similar grants to others. The railroad company, Whelan and two others who claim through him, exhibited an original bill against the Brumfields and their lessees for the cancellation of their claims to oil and gas in the land. The Brumfields and their lessees answered the bill of complaint and filed a cross-bill praying for the cancellation of the claim of the railroad company and its lessees to oil and gas in the land. A demurrer to this cross bill was overruled and an appeal granted.

The question presented for decision is, What title did the Yazoo and Mississippi Valley Railroad Company ac-

quire to this land under the condemnation proceeding therefor? Or, more narrowly, did it acquire thereby the ownership of the oil and gas, if any, that may be in the land?

By what procedure private property may be taken for public use rests with the legislature subject to the requirements of due process of law and Section 17 of the present State Constitution, formerly Section 10 of the Constitution of 1869, which provides that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof." Brown v. Beatty, supra; Wise v. Yazoo City, 96 Miss. 507, 51 So. 453, 26 L. R. A. (N. S.) 1130; Ann. Cas. 1912B, 377; 18 Am. Jur. (Em. Dom.), Secs. 3 to 9 inclusive; 29 C. J. S., Eminent Domain, Secs. 3 and 87. What the title to and the quantum of the interest in property taken for a public use in an eminent domain proceeding is, also rests in the discretion of the legislature. Or, to state it differently, the title to and interest in property taken for public use in such a proceeding is that designated by the statute authorizing its taking. 18 Am. Jur. (Em. Dom.), Sec. 114; 20 C. J. 1221; 2 Lewis on Eminent Domain (3 Ed.), Sec. 448; Note to Tacoma Safety Deposit Co. v. Chicago, 20 Ann. Cas. at page 568. Section 7 of Chapter DXLI, Laws of 1882, under which this land was condemned, expressly provides that the title acquired by such a condemnation shall be "in fee simple," a technical common law phrase meaning "absolute and unqualified ownership," Hill v. Woodward, 100 Miss. 879, 57 So. 294, 297, 39 L. R. A. (N. S.) 538, Ann. Cas. 1914A, 390. While minerals in land are susceptible to ownership separate from that of the earth or soil, the term "land" embraces both its soil and minerals, and a conveyance of land, without more, includes both. Since words which have a clear and definite meaning at common law should be given that meaning when used in a statute, unless it is clear from the statute itself that they were used in a different sense, Daily v. Swope, 47 Miss. 367; Dantzler

Lbr. Co. v. State, 97 Miss. 355, 53 So. 1, this inquiry might end here except for the contention of the appellees that because the statute creating the Yazoo and Mississippi Valley Railroad Company refers to Section 8 of Chapter 21, Laws of 1852, for the procedure for the taking of private property by it, the two statutes must be construed together and when this is done it will appear that the fee simple title granted by the Yazoo and Mississippi Valley Railroad Company's charter is cut down to a mere easement or right-of-way across the land taken by it.

We will assume, without deciding, that the Act of 1852 conferred on the Mississippi Central Railroad Company the right only to use and occupy land condemned by it in an eminent domain proceeding, which right existed "only for such term of time as said company shall occupy the same as a railroad." On the contrary, Section 7 of the charter of the Yazoo and Mississippi Valley Railroad Company expressly provides that upon the condemnation of land by it in accordance with the procedure therefor in this Act of 1852 "the title in fee simple to such lands . . . shall vest in the said company, its successors and assigns." It is manifest from this that the reference in Yazoo and Mississippi Valley Railroad Company's charter to that of the Mississippi Central Railroad Company was solely for the purpose of adopting the procedure therein for condemning land. Had the legislature intended thereby to permit the Yazoo and Mississippi Railroad Company to acquire only an easement over land condemned by it, the words just quoted from its charter would have been omitted therefrom. One, of course, cannot have a fee simple title to land and at the same time have an easement only over it. The legislature unquestionably meant for this railroad company to have one or the other, and it stated in the company's charter in as clear and apt language as could be employed, that its title should be fee simple. This construction is reinforced by the provision in Section 7

of the Charter of the Yazoo and Mississippi Valley Railroad Company granting it the right to cross any land owned by the state and the fee simple title to one hundred feet thereof "on each side of the center of said railroad track or tracks."

The words "title in fee simple" to land owned by individuals appropriated by the company must be given the same meaning under all rules of construction as the same words in the same section of the statute with reference to land owned by the state.

Public history demonstrates that in the 1880's many railroads were constructed throughout the country and that the states, particularly Mississippi, encouraged and solicited the building thereof. The Yazoo and Mississippi Valley Railroad Company's charter contains a whereas which concludes with the words:

"Now, therefore, in order to induce the investment of capital in the construction, maintenance and operation of such a railroad and branches, and thus develop the resources and wealth of this State:" Quite a number of railroads were chartered at that session of the legislature. Some of them were given the right only to use and occupy the land condemned for the use of the railroad, but four of these charters (Yazoo and Mississippi Valley Railroad Company; Alabama and Mississippi Railroad Company; Memphis and New Orleans Railroad and Levee Company; Canton, Aberdeen, Fulton and Nashville Railroad Company) provide that the title to land condemned for their use shall vest in the railroads in fee simple, and in each of the four, Section 8 of Chapter 21, Laws of 1852, was referred to for the procedure by which the land was to be condemned. This seems to indicate that the legislature knew what it was doing and what words to use to accomplish its purpose. Among the names of its charter members appearing in the charter of the Yazoo and Mississippi Valley Railroad Company are those of Wiley P. Harris, James Z. George, and R. H. Thompson, three of Mississippi's admittedly great lawyers, who undoubtedly

knew how to express legal thought in apt words, and if they did not prepare this charter, it is safe to presume that they examined and approved it. But it is said that the damages assessed by the jury in the proceeding for the condemnation of this land were such only as would be sustained by the owners thereof "by reason of the use and occupation" thereof by the railroad company and, therefore, the right to use and occupy the land, or, in other words, an easement thereover, was all that the railroad company there acquired. We have no means of knowing what the evidence before this jury was, but when we consider that this railroad's charter granted it the right to exist forever and that the railroad which it was to construct was intended to remain for a long though indefinite period of time, during which the former owners of the land would be effectually excluded from any access to or use thereof, it would seem that the damages to which the owners were entitled would be practically the same whether the fee therein or only an easement thereover was appropriated. But, be· that as it may, the Act of 1882 expressly provides that the title acquired by this condemnation shall be in fee simple, and if the owners of the land objected thereto they had the right, in a legal proceeding initiated either by them or the railroad company, to test the validity of that provision of the statute. This right they waived when they accepted the compensation awarded them by the jury, thereby acquiescing in the provision of the statute that the railroad company's title to the land should be in fee simple.

Cases from other courts in accord herewith may be found in Note to Hays v. Walnut Creek Oil Co., Ann. Cas. 1918A at page 809.

The demurrer to the appellees' cross bill should have been sustained.

Reversed and remanded.