457 P.2d 361

**SEDILLO TITLE GUARANTY, INC., a New Mexico Corporation, Plaintiff-Appellee,**

v.

**Walter S. WAGNER and Blanche Wagner, his wife, Defendants-Appellants,**

v.

**Lila S. WOODRUFF and Charles Woodruff, her husband, Edward Miller and Joan Miller, his wife, and Ben F. Brown and Margaret Brown, his wife, Third Party Defendants-Appellees.**

No. 8691.

Supreme Court of New Mexico.

July 21, 1969.

Robert T. Knott, Albuquerque, for appellants.

Carlos Sedillo, Albuquerque, for Sedillo Title Guaranty, Inc.

Hines & Mistretta, Albuquerque, for third party defendants Woodruffs, Millers and Browns.

OPINION

TACKETT, Justice.

In this case plaintiff-appellee Sedillo Title Guaranty, Inc., a New Mexico corporation, filed suit in the District Court of Sandoval County, New Mexico, against several defendants, including Walter S. Wagner and Blanche Wagner, his wife, appellants herein, designated "Wagners," Edward Miller and Joan Miller, his wife, designated "Millers," Charles Woodruff and Lila Woodruff, his wife, designated "Woodruffs," and Ben F. Brown and Maragret Brown, his wife, designated "Browns," for ejectment and to quiet title to a certain tract of land located in Sandoval County, New Mexico.

The 50′ easement in question was originally established on the northerly part of

Map 15, Tract 16, of the Middle Rio Grande Conservancy District. This tract was a part of a larger tract, comprising approximately 188 acres of land, 143 acres of which lie to the west of the Corrales Main Canal. Another tract of approximately 14 acres lies to the east of the Canal, between the Canal on the west and Corrales Road on the east. In 1949, the whole 188-acre tract was owned by Jim and George Davis. In 1950, a real estate contract was entered into between the Davis brothers and Charles and Myrtle Joplin for the sale of the 14-acre tract. This real estate contract was recorded in the records of Sandoval County, New Mexico, and contains the following reservation: "There is reserved along the North Boundary of said land a strip 50 feet wide for use as a roadway." A policy of title insurance was issued which contained this same reservation or easement. In 1951, Mrs. Joplin gave an assignment of the real estate contract, as well as a deed on the 14-acre tract, to the Browns. The deed contained the same reservation or easement.

Subsequently, Browns divided Map 15, Tract 16, of the Middle Rio Grande Conservancy District, into several tracts, conveying Tracts 16–A–1 and 16–A–2 to Wagners, and Tract 16–B–1–A to Woodruffs. Wagners later conveyed Tract 16–A–2 to Woodruffs. Browns conveyed Tract 16–B–2 (A and B) to various grantees who eventually conveyed to Millers, the Millers' tract bordering upon Woodruffs and both extending from Corrales Road to the Canal. The record reveals that the north easement, for which appellee was granted judgment in the lower court, was never extinguished by any written instrument. Wagner admitted that he took the property with the actual knowledge that it was burdened by the easement on the northern part of his land. Through various conveyances, the approximately 143 acres of land west of the Canal came into the hands of appellee Sedillo and, with the exception of this conveyance, the north easement was not mentioned in any other instrument in the chain of title.

This action was filed on February 21, 1966, and the appeal was filed in this court on June 6, 1968. Plaintiff Sedillo sued to quiet title and for ejectment, claiming a 25′ strip of land across the property of defendants Woodruffs and 25′ across Millers' property, which represented the attempted transfer of the original 50′ easement from the north. After trial, the court, sitting without a jury, dismissed appellee's complaint with prejudice as to defendants Woodruffs and Millers. Judgment was entered on June 30, 1966, and no appeal was taken from that judgment. Subsequently, Wagners were allowed to file a cross-complaint and amended cross-complaint against defendants Woodruffs, Millers and others. Thereafter, on May 15, 1967, defendants Woodruffs and Millers filed their answer to the amended cross-complaint. On July 17, 1967, the trial court entered its order in favor of defendants Woodruffs and Millers, and on October 23, 1967, the court entered a second order affirming the order of June 30, 1966, which order dismissed the claim of appellants Wagners against defendants Woodruffs and Millers with prejudice, and further dismissed the cross-complaint of Wagners against Woodruffs with prejudice.

The issues were tried to the court, without a jury, which found that defendants-appellants Wagners were to provide plaintiff with the original 50′ easement to the north, or were to provide an alternate 50′ easement or access roadway over their property; that Wagners attempted to transfer the original easement from the northerly to the southerly part of their tract of land, and the court held that the attempt to transfer the original easement was void, as against appellee, which resulted in this appeal.

The trial court found that Woodruffs and Millers were bona fide purchasers of the land they respectively purchased; that they were without notice of the 50′ easement along the northerly boundary of Wagners' land giving access to the land west of the Corrales Main Canal; that,

as bona fide purchasers, Woodruffs and Millers had knowledge only as to the matters of record, viz., a 25′ easement on either side of their common boundary; that said easement ran from Highway 46 and dead-ended at the Corrales Main Canal; and that they had no notice, actual or constructive, that this easement was intended by Browns and Wagners to provide access to the acreage lying west of the Canal. Southern Union Gas Co. v. Cantrell, 56 N.M. 184, 241 P.2d 1209 (1952).

Woodruffs and Millers, in order to merge their respective servient estates with the easements thereon, exchanged quitclaim deeds, thereby attempting to extinguish the 50′ easement over their particular property. 28 C.J.S. Easements § 57 at 720; Dressler v. Isaacs, 217 Or. 586, 343 P.2d 714 (1959).

▮ As a general rule, in the absence of contrary statute, the location of an easement when once established cannot be changed by either party without the other's consent except under the authority of a grant or reservation to this effect. 28 C.J.S. Easements § 84 at 763; Stamatis v. Johnson, 71 Ariz. 134, 224 P.2d 201 (1950), modified, 72 Ariz. 158, 231 P.2d 956 (1951); Coast Storage Company v. Schwartz, 55 Wash.2d 848, 351 P.2d 520 (1960).

In 28 C.J.S. Easements § 49 at 712–713, it is stated:

> "Notice of an easement will be imputed to a purchaser where the easement is properly recorded or is of such character that a purchaser acting with ordinary diligence would learn of its existence.
>
> " * * *
>
> "The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. * * *"

In Sanchez v. Dale Bellamah Homes of New Mexico, Inc., 76 N.M. 526, 417 P.2d 25 (1966), this court stated:

> " * * *. Under such circumstances, the owner of the servient tenement is charged with notice of facts which an inquiry would have disclosed. Mutz v. Le Sage, 61 N.M. 219, 297 P.2d 876; Anno. 41 A.L.R. 1442, 1448."

28 C.J.S. Easements § 52 at 716 states:

> "The forfeiture of easements is not favored by the courts, and an easement can be extinguished only in some mode recognized by law. An easement cannot be terminated or abridged at will by the owner of the servient estate or his successors, or without the consent of the owner of the easement, unless the instrument by which the easement was created clearly manifests an intention that the easement shall be terminable at the will of the owner of the servient estate, or at the option of either or both of the parties; * * *."

▮ In the case before us, the deed from the Davis brothers to Joplins did not mention the easement; however, the contract, special warranty deed and policy of title insurance did mention the reservation and this would be sufficient to put Wagners on notice that their land was burdened by an easement.

In Burgas v. Stoutz, 174 La. 586, 141 So. 67 (1932), it was held that recorded deeds granting a purchaser the right of passage over the vendor's adjoining lot was not affected, where the subsequent owner's chain of title to the adjoining lot *did not mention the right*.

In Syers v. Dodd, 120 Cal.App. 444, 8 P.2d 157 (1932), the court held that one who purchases land having actual or constructive notice of an easement takes the land subject to the easement.

▮ The record in the instant case reveals that the northerly 50′ easement had never been used; however, nonuse of an easement does not create a presumption of abandonment. In addition to nonuse, other circumstances must exist which clearly evidence an intention to abandon the easement. Posey v. Dove, 57 N.M. 200, 257 P. 2d 541 (1953). Mere nonuse, for however long, of an easement created by grant is almost universally held not to constitute an

abandonment. 28 C.J.S. Easements § 60 at 724–725; Jennings v. Dunn, 252 Ky. 740, 68 S.W.2d 13 (1933).

Appellants Wagners are bound by § 70–1–33, N.M.S.A., 1953 Comp., which provides:

"In a conveyance or mortgage of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and *it shall be unnecessary to enumerate or mention them generally or specifically.*" (Emphasis added)

Also,

"Easements appurtenant to land may be conveyed with a conveyance of the land. Where an easement is annexed as an appurtenance to land by an express or implied grant or reservation, or by prescription, it passes with a transfer of the land *although not specifically mentioned in the instrument of transfer. * * *"* (Emphasis added)

28 C.J.S. Easements § 46 at 708–709, and cases cited therein; Ritter-Walker Co. v. Bell, 46 N.M. 125, 123 P.2d 381 (1942). Compare, Dyer v. Compere, 41 N.M. 716, 73 P.2d 1356 (1937).

█ An easement cannot be extinguished by an unexecuted oral agreement. Dunn v. Youmans, 224 Ill. 34, 79 N.E. 321 (1906); Tabbutt v. Grant, 94 Me. 371, 47 A. 899 (1900); Ware v. Chew, 43 N.J.Eq. 493, 11 A. 746 (1888); Tusi v. Jacobsen, 134 Or. 505, 293 P. 587, 939, 71 A.L.R. 1364 (1930); Annot. 71 A.L.R. 1370.

█ An easement may be extinguished by an express written release of the servient estate. Adams v. Hodgkins, 109 Me. 361, 84 A. 530, 42 L.R.A.,N.S., 741 (1912); Di Leo v. Pecksto Holding Corp., 304 N.Y. 505, 109 N.E.2d 600 (1952).

█ In order to be effectual, a release must be executed with the same formalities as are generally required in making transfers of interest in land. Dyer v. Sanford,

50 Mass. (9 Metc.) 395 (1845). We do not have such a release in the case before us.

█ The trial court, under its equitable powers, properly granted alternative relief by relocating the easement. Stamatis v. Johnson, supra.

The dismissal of the cross-complaint is free from error.

The findings of fact made by the trial court have ample support in the record. Finding no error, the judgment appealed from will be affirmed.

It is so ordered.

NOBLE, C. J., and MOISE, J., concur.